NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2007
Decided June 26, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-3609

| | |
|---|---|
| GARY ZAMECNIK, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 03 C 2664 |
| ABBCO, INC. ERISA PLAN, et al., *Defendants-Appellees.* | David H. Coar, *Judge.* |

## O R D E R

Gary Zamecnik worked as a sales manager for Abbco, Inc., until September 1999 when purportedly he became disabled. At Abbco he was covered by a long-term disability plan of insurance underwritten and administered by Continental Casualty Company. Sixteen months after he stopped working, he filed a claim for disability benefits with Continental, which was denied. Zamecnik then turned to the district court and filed suit under the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1132(a)(1)(B). The district court entered summary judgment against Zamecnik, and he now appeals. Because Zamecnik failed to provide timely notice of his disability claim, we affirm.

## Background

In January 2001 Zamecnik filed a claim with Continental for benefits, asserting that he was disabled due to "rheumatoid arthritis—joint surgery—accident motor veh. 6-3-00." In this claim he explained that he stopped working at Abbco on September 7, 1999, which, according to the terms of the disability insurance plan, resulted in the termination of his coverage as of that date because he no longer was an active employee working at least 30 hours per week. However, under the plan Continental remained liable for losses that began before the date coverage ended, and according to two fill-in-the-blank forms completed by Zamecnik's rheumatologist, he had been disabled as of September 7, 1999.

To review his claim, Continental requested medical records from Zamecnik's doctors, including his rheumatologist. These records show that in 1996 Zamecnik was diagnosed with seronegative spondyloarthropathy, a group of inflammatory joint diseases similar to rheumatoid arthritis. The records document that on September 2, 1999, Zamecnik called his rheumatologist and left a message that he was having an emergency due to pain in his right arm and elbow. However, Zamecnik did not visit his rheumatologist until November 1999, at which time the doctor noted that he was "doing fairly well lately," an observation he repeated in a letter written two months later.

Records requested by Continental also show that on September 20, 1999, Zamecnik visited a podiatrist who noted that Zamecnik reportedly was experiencing "excruciating" foot pain and injected him with pain killers. But just ten days later, the podiatrist noted that Zamecnik was much improved. In December 1999 Zamecnik underwent a bunionectomy to treat his foot. By April 2000 his podiatrist noted that Zamecnik was "asymptomatic . . . happy and pain free." Despite the success of the surgery, Zamecnik did not return to Abbco.

Two months later Zamecnik was in a serious motor-vehicle accident that resulted in a ruptured spleen and multiple rib fractures. After this accident Zamecnik visited his rheumatologist twice complaining of constant pain under his rib cage and flank. In October 2000 Zamecnik's rhuematologist wrote a letter "To Whom it May Concern" explaining that, based on these examinations, Zamecnik was disabled.

In May 2001, after reviewing these records, Continental denied Zamecnik's request for disability benefits, noting that the medical evidence did not demonstrate that he was disabled before he stopped working and his coverage ended in September 1999. Zamecnik then provided Continental with additional evidence and requested reconsideration of his claim. This evidence included a July 2001 letter from Zamecnik's rheumatologist, addressed to Zamecnik's attorney, stating that he

became disabled due to his joint disease "in the latter months of 1999." Continental concluded that the additional information did not alter its original decision. Zamecnik's claim was then reviewed by Continental's Appeals Committee, which upheld the denial of his claim. In this decision Continental noted that the insurance plan required Zamecnik to provide it with written notice of his claim "within 30 days after the loss begins or as soon as reasonably possible." Because Zamecnik, without explanation, did not file his claim until 16 months after his disability purportedly began, Continental concluded that he did not timely file it. After his appeal was denied, Zamecnik wrote again to Continental, noting that the Social Security Administration had decided he was disabled as of December 1999 and was eligible for disability benefits. Responding that it was not bound by the Social Security Administration's finding, Continental again affirmed its decision to deny benefits.

Zamecnik then sued under ERISA to recover disability payments. *See* 29 U.S.C. § 1132(a)(1)(B). The parties agreed that the district court should review Continental's denial of benefits de novo and that the evidence should consist only of Continental's administrative claim file. The parties filed cross motions for summary judgment. Continental[1] argued both that Zamecnik was not disabled when he ceased active employment in September 1999, and that even if he was disabled he did not timely file a claim for benefits. The district court ruled against Zamecnik. Without commenting on the timeliness of Zamecnik's claim for benefits, the court reasoned that "there is simply no credible proof that he was totally disabled at the time he stopped working."

## Discussion

Zamecnik challenges the adverse ruling at summary judgment. The scope of the district court's review of Continental's ruling on Zamecnik's claim is governed by the ERISA plan itself—"[a]bsent clear language to the contrary, plans are read to provide for searching judicial review of benefits determinations." *Patton v. MFS/Sun Life Fin. Distrib., Inc.*, 480 F.3d 478, 485 (7th Cir. 2007). Here, the parties agree that the district court appropriately reviewed Continental's denial of

---

[1] Continental apparently was named as a defendant because it is the administrator of Abbco's ERISA Plan, although the parties do not say so explicitly. Zamecnik also named Abbco and Abbco's ERISA Plan as defendants, and they filed a parallel motion for summary judgment. Because Abbco is neither the Plan nor the Plan Administrator, it cannot be held liable under ERISA, and therefore is not a proper party to this lawsuit. *See Garratt v. Knowles*, 245 F.3d 941, 949 (7th Cir. 2001); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). For simplicity, this order refers only to Continental.

disability payments de novo.  In turn, we review the district court's grant of summary judgment de novo, drawing all reasonable inferences in Zamecnik's favor. *See Sperandeo v. Lorillard Tobacco Co., Inc.*, 460 F.3d 866, 870 (7th Cir. 2006).  Ordinary principles of contract interpretation govern the interpretation of Continental's disability plan.  *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998).

Continental has renewed its argument that it properly denied Zamecnik benefits since he did not timely file his claim.  The plan requires that the insured provide written notice of a claim for disability benefits "within 30 days after loss begins or as soon as reasonably possible," but Zamecnik waited 16 months.  Although the district court did not address this argument, this court may affirm a grant of summary judgment on any basis fairly supported by the record.  *See Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642 (7th Cir. 2000).

Zamecnik has never explained this delay in filing his claim.  He ignored the point when he responded to Continental's motion for summary judgment, and during oral argument before us his counsel admitted that "there isn't anything in the record that explains it."  It was up to Zamecnik to show that he timely filed his claim, and because he cannot point to anything in the record to justify his 16-month delay, the district court did not err in entering summary against him.  Morever, we can discern nothing that would have excused a delay of this length if Zamecnik really did become disabled before he ceased working in September 1999.  Even his multiple health problems cannot account for this long delay.  Zamecnik's podiatrist noted that he was in excruciating pain in September 1999, which may have delayed his filing, but according to the podiatrist Zamecnik was much improved by the end of that month.  We see no reason why he could not have filed his claim between the end of September 1999, and his bunionectomy in December 1999.  Even Zamecnik's rheumatologist noted that he was "doing fairly well" in November 1999.  Similarly, while Zamecnik's December bunionectomy could have briefly prevented him from filing a claim, it does not explain why he failed to file the claim after he was fully healed in April 2000.  Zamecnik's June 2000 accident and subsequent hospitalization may have forestalled his filing, but it does not excuse his failure to file a claim before then.

We need not address Zamecnik's contention that he became disabled while covered by the disability plan.  He admits that nothing in the record explains the 16-month delay in filing his claim for benefits, therefore his claim was properly denied.  Accordingly, we AFFIRM the judgment of the district court.